# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE.**     **2. PLEASE TYPE OR PRINT.**     **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Wouti, et al. | Vermont | William K. Sessions III |
| v. | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
| Winters, et al. | February 20, 2025 | 2:24-cv-00614-wks |
| | Date the Notice of Appeal was Filed: | Is this a Cross Appeal? |
| | March 21, 2025 | Yes    ✓ No |

| **Attorney(s) for Appellant(s):** | Counsel's Name: | Address: | Telephone No.: | Fax No.: | E-mail: |
|---|---|---|---|---|---|
| ✓ Plaintiff    Defendant | See Exhibit A. | | | | |

| **Attorney(s) for Appellee(s):** | Counsel's Name: | Address: | Telephone No.: | Fax No.: | E-mail: |
|---|---|---|---|---|---|
| Plaintiff    ✓ Defendant | See Exhibit A. | | | | |

| Has Transcript Been Prepared? | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously?    Yes    ✓ No |
|---|---|---|---|
| No transcript needed. | | | If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:     Reporter Citation: (i.e., F.3d or Fed. App.) |

***ADDENDUM "A":*** **COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.**

***ADDENDUM "B":*** **COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.**

### PART A: JURISDICTION

| 1. Federal Jurisdiction | | 2. Appellate Jurisdiction | |
|---|---|---|---|
| U.S. a party | Diversity | Final Decision | Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| ✓ Federal question (U.S. not a party) | Other (specify): _____ | ✓ Interlocutory Decision Appealable As of Right | Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

## PART B: DISTRICT COURT DISPOSITION   (Check as many as apply)

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|
| ✓ Pre-trial<br>During trial<br>After trial | Default judgment<br>Dismissal/FRCP 12(b)(1)<br>  lack of subj. matter juris.<br>Dismissal/FRCP 12(b)(6)<br>  failure to state a claim<br>Dismissal/28 U.S.C. § 1915(e)(2)<br>  frivolous complaint<br>Dismissal/28 U.S.C. § 1915(e)(2)<br>  other dismissal<br><br>Dismissal/other jurisdiction<br>Dismissal/merit<br>Judgment / Decision of the Court<br>Summary judgment<br>Declaratory judgment<br>Jury verdict<br>Judgment NOV<br>Directed verdict<br>✓ Other (specify): Denial of preliminary injunction | Damages:<br>  Sought: $ _____<br>  Granted: $ _____<br>  Denied: $ _____<br><br>✓ Injunctions:<br>✓ Preliminary<br>  Permanent<br>  Denied |

## PART C: NATURE OF SUIT   (Check as many as apply)

| 1. Federal Statutes | | | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|---|---|
| Antitrust<br>Bankruptcy<br>Banks/Banking<br>✓ Civil Rights<br>Commerce,<br>Energy<br>Commodities<br>Other (specify): _____ | Communications<br>Consumer Protection<br>Copyright ☐ Patent<br>Trademark<br>Election<br>Soc. Security<br>Environmental | Freedom of Information Act<br>Immigration<br>Labor<br>OSHA<br>Securities<br>Tax | Admiralty/<br>Maritime<br>Assault /<br>Defamation<br>FELA<br>Products Liability<br>Other (Specify): | Admiralty/<br>Maritime<br>Arbitration<br>Commercial<br>Employment<br>Insurance<br>Negotiable<br>instruments<br>Other Specify | Civil Rights<br>Habeas Corpus<br>Mandamus<br>Parole<br>Vacate Sentence<br>Other |

| 5. Other | 6. General | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| Forfeiture/Penalty<br>Real Property<br>Treaty (specify):<br>Other (specify): _____ | Arbitration<br>Attorney Disqualification<br>Class Action<br>Counsel Fees<br>Shareholder Derivative<br>Transfer | ✓ Yes    No<br><br>Will appeal raise a matter of first impression?<br><br>✓ Yes    No |

1. Is any matter relative to this appeal still pending below?  ✓ Yes, specify:  2:24-cv-00614-wks          No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)    Arises from substantially the same case or controversy as this appeal?    Yes    ✓ No

    (B)    Involves an issue that is substantially similar or related to an issue in this appeal?    ✓ Yes    No

If yes, state whether   "A," or ✓ "B," or both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name:<br>Antonucci, et al. v. Winters, et al. | Docket No.<br>25-514 | Citation: | Court or Agency:<br>USDC for Vermont |
|---|---|---|---|
| Name of Appellant:  Melinda Antonucci and Casey Mathieu | | | |

| Date:<br>04/01/2025 | Signature of Counsel of Record:  s/ Johannes Widmalm-Delphonse |
|---|---|

# NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE:** **IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

Wuoti, et al. v. Winters, et al., 25-678

**Exhibit A to Form C**

**Attorneys for Appellants:**

Johannes Widmalm-Delphonse
Mallory B. Sleight
Alliance Defending Freedom
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4655
jwidmalmdelphonse@adflegal.org
msleight@adflegal.org

Jonathan A. Scruggs
Henry W. Frampton, IV
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@adflegal.org
hframpton@adflegal.org

John J. Bursch
Caroline C. Lindsay
Suzanne E. Beecher
Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690
jbursch@adflegla.org
clindsay@adflegal.org
sbeecher@adflegal.org

Gretchen M. Wade
Wadleigh, Starr & Peters, PLLC
95 Market Street
Manchester, NH 03101
(603) 206-7262
gwade@wadleighlaw.com

**Attorneys for Appellees:**

Jonathan T. Rose
Ryan P. Kane
Patrick Gaudet
Office of the Vermont Attorney General
109 State Street, 3rd Floor
Montpelier, VT 05609
(802) 793-1646
jonathan.rose@vermont.gov
ryan.kane@vermont.gov
patrick.gaudet@vermont.gov

Wuoti, et al. v. Winters, et al., 25-678

**Addendum A**

I.  *A brief, but not perfunctory, description of the nature of the action.*

Plaintiffs are two couples who were previously licensed foster parents in the State of Vermont. Then, Vermont revoked each couple's foster-care license for violating licensing rules according to its policy on "supporting" and "affirming" a child's sexual or gender identity. Under this policy, foster-care license applicants must agree to use a hypothetical child's preferred pronoun and name, support the child's desire to dress according to whatever gender identity the child may claim, and otherwise treat the child as a gender different from their natal sex. Because Plaintiffs will not speak messages or engage in acts that violate their religious beliefs about human sexuality, Vermont revoked their licenses for their purported failure to demonstrate knowledge about foster children's needs and to demonstrate ability to meet a child's physical, emotional, and developmental needs. Plaintiffs assert that Vermont's policy excluding them from foster-care licensing violates their free-speech and free-exercise rights under the First Amendment and is also unconstitutionally vague as applied to them.

II.  *The Result Below.*

Plaintiffs moved for a preliminary injunction to enjoin Vermont from applying its policy to bar Plaintiffs and any similarly situated applicants from seeking a foster-care license. The District Court denied that motion. It held that a) Vermont's policy did not compel or restrict speech based on content or viewpoint, b) the policy was neutral and generally applicable, c) though the policy did not trigger heightened constitutional scrutiny, it was still narrowly tailored to advance a compelling government interest that satisfied strict scrutiny, and d) the policy was not vague.

III.  *A copy of the notice of appeal and a current copy of the* lower *court docket sheet.*

Attached below.

IV.  *A copy of all relevant opinions/orders forming the basis for this appeal.*

Attached below.

Wuoti, et al. v. Winters, et al., 25-678

**Addendum B**

I.    *Issues raised on appeal.*

A Vermont Department of Children and Families policy requires prospective foster parents to be "holistically affirming and supporting" of a child's claimed sexual and gender identities. Under this policy, prospective caregivers must agree to affirm certain beliefs about LGBTQ issues by committing to using a hypothetical child's chosen pronouns, taking a hypothetical child to events like gay-pride parades, and refraining from expressing contrary views. Vermont does not require caregivers to affirm and support a child's other beliefs or traits this way. And Vermont allows caregivers to refuse to care for children based on traits like sex and disability.

Plaintiffs are two couples who were previously licensed as foster parents. Vermont revoked their licenses under its policy because they will not speak or act in ways that violate their religious beliefs. This appeal raises four questions:

1. Whether Vermont's policy infringes on Plaintiffs' free-speech rights by compelling and restricting their speech based on content and viewpoint.
2. Whether Vermont's policy infringes on Plaintiffs' free-exercise rights through a system of individualized assessments.
3. Whether Vermont's policy satisfies heightened constitutional scrutiny under the First Amendment.
4. Whether Vermont's policy is unconstitutionally vague as applied to Plaintiffs.

II.   *Standard of review.*

The denial of a preliminary injunction is reviewed for abuse of discretion while the underlying legal rulings are reviewed de novo.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT
# WINDHAM DIVISION

**BRIAN WUOTI**; **KAITLYN WUOTI**; **MICHAEL GANTT**; and **REBECCA GANTT**,

　　　　　　　　　　*Plaintiffs*,

v.

**CHRISTOPHER WINTERS**, in his official capacity as Commissioner of the Vermont Department for Children and Families, **ARYKA RADKE**, in her official capacity as Deputy Commissioner of the Family Services Division, and **STACEY EDMUNDS**, in her official capacity as Director of Residential Licensing & Special Investigations,

　　　　　　　　　　*Defendants*.

Case No.: 2:24-cv-00614

NOTICE OF APPEAL

## PLAINTIFFS' NOTICE OF APPEAL

　　Plaintiffs Brian and Kaitlyn Wuoti and Michael and Rebecca Gantt appeal to the United States Court of Appeals for the Second Circuit from the February 20, 2025, Opinion and Order denying Plaintiffs' motion for a preliminary injunction (ECF No. 59).

Notice of Appeal

Respectfully submitted this 21st day of March, 2025.

Gretchen M. Wade
New Hampshire Bar No. 273726
**Wadleigh, Starr & Peters, P.L.L.C**
95 Market Street
Manchester, NH 03101
(603) 669-4140
(603) 669-6018 Fax
gwade@wadleighlaw.com

_/s/ Johannes Widmalm-Delphonse_
Johannes Widmalm-Delphonse*
Virginia Bar No. 96040
Mallory B. Rechtenbach*
Nebraska Bar No. 27129
**Alliance Defending Freedom**
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
(571) 707-4656 Fax
jwidmalmdelphonse@ADFlegal.org
mrechtenbach@ADFlegal.org

Jonathan A. Scruggs*
Arizona Bar No. 030505
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@ADFlegal.org

Suzanne E. Beecher*
California Bar No. 329586
**Alliance Defending Freedom**
440 First Street NW
Washington, D.C. 20001
(202) 393-8690
(202) 347-3622 Fax
sbeecher@ADFlegal.org

_Attorneys for Plaintiffs_
_*Admitted Pro Hac Vice_

2

Notice of Appeal

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of March, 2025, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send a notification to all counsel of record.

<u>*/s/ Johannes Widmalm-Delphonse*</u>
Johannes Widmalm-Delphonse
*Attorney for Plaintiffs*

Notice of Appeal

**Query**   **Reports**   **Utilities**   **Help**   **Log Out**

APPEAL,ENE2

# U.S. District Court
## District of Vermont (Burlington)
## CIVIL DOCKET FOR CASE #: 2:24-cv-00614-wks

Wuoti et al v. Winters et al
Assigned to: Judge William K. Sessions III
related Case: 2:24-cv-00783-wks
Cause: 42:1983 Civil Rights Act

Date Filed: 06/04/2024
Jury Demand: None
Nature of Suit: 440 Civil Rights:
Other
Jurisdiction: Federal Question

## **Plaintiff**

**Brian Wuoti**          represented by   **Johannes Widmalm-Delphonse ,
Esq.**
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, AZ 85260
571-707-4655
Fax: 480-444-0028
Email:
jwidmalmdelphonse@adflegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan A. Scruggs , Esq.**
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, AZ 85260
480-444-0020
Email: jscruggs@ADFlegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mallory B. Sleight**
Alliance Defending Freedom
44180 Riverside Pkwy
Lansdowne, VA 20176
202-864-9638
Email: msleight@adflegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Suzanne E. Beecher , Esq.**
Alliance Defending Freedom
440 First Street, NW, Suite 600
Washington, DC 20001
630-806-9028
Email: sbeecher@adflegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
Wadleigh, Starr & Peters, PLLC
95 Market Street
Manchester, NH 03101
603-206-7262
Email: gwade@wadleighlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **Kaitlyn Wuoti** | represented by | **Johannes Widmalm-Delphonse , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Jonathan A. Scruggs , Esq.**<br>(See above for address)<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Mallory B. Sleight**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Suzanne E. Beecher , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Michael Gantt**          represented by **Johannes Widmalm-Delphonse , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan A. Scruggs , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mallory B. Sleight**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Suzanne E. Beecher , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Rebecca Gantt                 represented by   **Johannes Widmalm-Delphonse ,
                                              Esq.**
                                              (See above for address)
                                              *PRO HAC VICE*
                                              *ATTORNEY TO BE NOTICED*

                                              **Jonathan A. Scruggs , Esq.**
                                              (See above for address)
                                              *PRO HAC VICE*
                                              *ATTORNEY TO BE NOTICED*

                                              **Mallory B. Sleight**
                                              (See above for address)
                                              *PRO HAC VICE*
                                              *ATTORNEY TO BE NOTICED*

                                              **Suzanne E. Beecher , Esq.**
                                              (See above for address)
                                              *PRO HAC VICE*
                                              *ATTORNEY TO BE NOTICED*

                                              **Gretchen M. Wade , Esq.**
                                              (See above for address)
                                              *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Christopher Winters**          represented by   **Patrick T. Gaudet , Esq.**
*in his official capacity as*                    Office of the Vermont Attorney
*Commissioner of Vermont*                        General
                                                 109 State Street

| | |
|---|---|
| *Department of Children and Families* | Montpelier, VT 05609-1001<br>802-828-3178<br>Email:<br>patrick.gaudet@vermont.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | **Jonathan T. Rose , Esq.**<br>Office of the Vermont Attorney General<br>109 State Street, 3rd Floor<br>Montpelier, VT 05609<br>802-793-1646<br>Email:<br>jonathan.rose@vermont.gov<br>*ATTORNEY TO BE NOTICED* |
| | **Ryan P. Kane , Esq.**<br>Office of the Vermont Attorney General<br>109 State Street, 3rd Floor<br>Montpelier, VT 05609<br>(802) 828-2153<br>Email: ryan.kane@vermont.gov<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Aryka Radke**<br>*in her official capacity as Deputy Commissioner of the Family Services Division* | represented by | **Patrick T. Gaudet , Esq.**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Jonathan T. Rose , Esq.**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Ryan P. Kane , Esq.** |

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Stacey Edmunds** | represented by | **Patrick T. Gaudet , Esq.** |

*in her official capactiy as Director of Residential Licensing & Special Investigations*

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan T. Rose , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan P. Kane , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**ENE Evaluator**

| | | |
|---|---|---|
| **ENE Evaluator** | represented by | **Gregory S. Clayton , Esq.** |

Clayton Mediation, LLC
P.O. Box 1016
Camden, ME 04843-1016
(207) 706-4977
Email:
gclayton@claytonmediation.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/04/2024 | 1 | COMPLAINT against Stacey Edmunds, Aryka Radke, Christopher Winters filed by Michael Gantt, Brian Wuoti, Rebecca Gantt, Kaitlyn Wuoti. ( Filing fee $ 405 receipt number AVTDC-1930019) (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Civil Cover Sheet, # 7 Proposed Summons for Christopher Winters, # 8 Proposed Summons for Aryka Radke, # 9 Proposed Summons for Stacey Edmunds) (Wade, Gretchen) (Attachment 5 replaced and Attachment 6 |

| | | |
|---|---|---|
| | | removed on 6/5/2024; Attachments 7, 8 and 9 replaced on 6/5/2024) (law). (Entered: 06/04/2024) |
| 06/04/2024 | | Case assigned to Judge William K. Sessions III. (kac) (Entered: 06/04/2024) |
| 06/04/2024 | 2 | MOTION for Appearance Pro Hac Vice of Johannes Widmalm-Delphonse (Filing fee $ 150 receipt number AVTDC-1930197) filed by Michael Gantt, Rebecca Gantt, Brian Wuoti, Kaitlyn Wuoti (Attachments: # 1 Affidavit of Johannes Widmalm-Delphonse, # 2 Certificate of Good Standing)(Wade, Gretchen) (Entered: 06/04/2024) |
| 06/04/2024 | 3 | MOTION for Appearance Pro Hac Vice of Mallory B. Rechtenbach (Filing fee $ 150 receipt number AVTDC-1930198) filed by Michael Gantt, Rebecca Gantt, Brian Wuoti, Kaitlyn Wuoti (Attachments: # 1 Affidavit of Mallory B. Rechtenbach, # 2 Certificate of Good Standing)(Wade, Gretchen) (Entered: 06/04/2024) |
| 06/04/2024 | 4 | MOTION for Appearance Pro Hac Vice of Jonathan A. Scruggs (Filing fee $ 150 receipt number AVTDC-1930201) filed by Michael Gantt, Rebecca Gantt, Brian Wuoti, Kaitlyn Wuoti (Attachments: # 1 Affidavit of Jonathan A. Scruggs, # 2 Certificate of Good Standing)(Wade, Gretchen) (Entered: 06/04/2024) |
| 06/04/2024 | 5 | MOTION for Appearance Pro Hac Vice of Suzanne E. Beecher (Filing fee $ 150 receipt number AVTDC-1930203) filed by Michael Gantt, Rebecca Gantt, Brian Wuoti, Kaitlyn Wuoti (Attachments: # 1 Affidavit of Suzanne E. Beecher, # 2 Certificate of Good Standing)(Wade, Gretchen) (Entered: 06/04/2024) |
| 06/06/2024 | 6 | NOTICE OF DOCKET ENTRY CORRECTION/REMOVAL re: 1 Complaint filed by Michael Gantt, Rebecca Gantt, Brian Wuoti, Kaitlyn Wuoti. Attachment 6 has been removed and combined with Attachment 5 - JS 44 Civil Cover Sheet and the instructional page has been removed from Attachment 5 - JS 44 Civil Cover Sheet. Also, the proposed summons were incomplete and have been removed. The corrected and/or |

| | | |
|---|---|---|
| | | completed documents are now attached to 1 and this entry. (Attachments: # 1 Proposed Summons as to Christopher Winters, # 2 Proposed Summons as to Aryka Radke, # 3 Proposed Summons as to Stacey Edmunds) (law) (Entered: 06/06/2024) |
| 06/06/2024 | 7 | ISSUED Summons as to Stacey Edmunds, Aryka Radke, Christopher Winters. (Attachments: # 1 Summons as to Aryka Radke, # 2 Summons as to Stacey Edmunds)(law) (Entered: 06/06/2024) |
| 06/17/2024 | 8 | AFFIDAVIT of Service filed by Michael Gantt, Brian Wuoti, Rebecca Gantt, Kaitlyn Wuoti. Christopher Winters served on 6/11/2024, answer due 7/2/2024(Widmalm-Delphonse, Johannes) (Entered: 06/17/2024) |
| 06/17/2024 | 9 | AFFIDAVIT of Service filed by Michael Gantt, Brian Wuoti, Rebecca Gantt, Kaitlyn Wuoti. Aryka Radke served on 6/11/2024, answer due 7/2/2024(Widmalm-Delphonse, Johannes) (Entered: 06/17/2024) |
| 06/17/2024 | 10 | AFFIDAVIT of Service filed by Michael Gantt, Brian Wuoti, Rebecca Gantt, Kaitlyn Wuoti. Stacey Edmunds served on 6/11/2024, answer due 7/2/2024(Widmalm-Delphonse, Johannes) (Entered: 06/17/2024) |
| 06/20/2024 | 11 | NOTICE OF APPEARANCE by Jonathan T. Rose, Esq on behalf of Stacey Edmunds, Aryka Radke, Christopher Winters. (Rose, Jonathan) (Entered: 06/20/2024) |
| 06/20/2024 | 12 | NOTICE OF APPEARANCE by Ryan P. Kane, Esq on behalf of Stacey Edmunds, Aryka Radke, Christopher Winters.(Kane, Ryan) (Entered: 06/20/2024) |
| 06/21/2024 | 13 | ORDER granting 2 Motion for Admission Pro Hac Vice of Johannes Widmalm-Delphonse. Signed by Judge William K. Sessions III on 6/21/2024. (This is a text-only Order.) (eae) (Entered: 06/21/2024) |
| 06/21/2024 | 14 | ORDER granting 3 Motion for Admission Pro Hac Vice of Mallory B. Rechtenbach. Signed by Judge William K. Sessions |

| | | |
|---|---|---|
| | | III on 6/21/2024. (This is a text-only Order.) (eae) (Entered: 06/21/2024) |
| 06/21/2024 | 15 | ORDER granting 4 Motion for Admission Pro Hac Vice of Jonathan A. Scruggs. Signed by Judge William K. Sessions III on 6/21/2024. (This is a text-only Order.) (eae) (Entered: 06/21/2024) |
| 06/21/2024 | 16 | ORDER granting 5 Motion for Admission Pro Hac Vice of Suzanne E. Beecher. Signed by Judge William K. Sessions III on 6/21/2024. (This is a text-only Order.) (eae) (Entered: 06/21/2024) |
| 07/01/2024 | 17 | MOTION for Preliminary Injunction *with oral argument requested* filed by Michael Gantt, Rebecca Gantt, Brian Wuoti, Kaitlyn Wuoti. (Attachments: # 1 Index of Exhibits, # 2 Memorandum in Support, # 3 Affidavit of Kaitlyn Wuoti, # 4 Affidavit of Michael Gantt, # 5 Affidavit of Mallory B. Rechtenbach, # 6 Exhibit A, # 7 Exhibit B, # 8 Exhibit C, # 9 Exhibit D, # 10 Exhibit E, # 11 Exhibit F, # 12 Exhibit G, # 13 Exhibit H, # 14 Exhibit I, # 15 Exhibit J, # 16 Exhibit K, # 17 Exhibit L)(Widmalm-Delphonse, Johannes) Text clarified on 7/1/2024 (law). (Entered: 07/01/2024) |
| 07/02/2024 | 18 | STIPULATED MOTION for Extension of Time to File Answer re 1 Complaint filed by Stacey Edmunds, Aryka Radke, Christopher Winters. (Rose, Jonathan) (Entered: 07/02/2024) |
| 07/02/2024 | 19 | ORDER granting 18 STIPULATED MOTION for Extension of Time to File Answer re 1 Complaint. Signed by Judge William K. Sessions III on 7/2/2024. (This is a text-only Order.) (eae) (Entered: 07/02/2024) |
| 07/10/2024 | 20 | UNOPPOSED MOTION for Extension of Time to File Response/Reply as to 17 MOTION for Preliminary Injunction filed by Stacey Edmunds, Aryka Radke, Christopher Winters(Rose, Jonathan) (Entered: 07/10/2024) |
| 07/10/2024 | 21 | ORDER granting 20 UNOPPOSED MOTION for Extension of Time to File Response/Reply as to 17 MOTION for Preliminary Injunction. Signed by Judge William K. Sessions III on |

| | | |
|---|---|---|
| | | 7/10/2024. (This is a text-only Order.) (eae) (Entered: 07/10/2024) |
| 07/26/2024 | 22 | MOTION for Leave to Exceed Page Limit *for Memorandum in Opposition* as to 17 MOTION for Preliminary Injunction filed by Stacey Edmunds, Aryka Radke, Christopher Winters. (Rose, Jonathan) Link added, text clarified on 7/26/2024 (law). (Entered: 07/26/2024) |
| 07/26/2024 | 23 | NOTICE *of Consent* by Stacey Edmunds, Aryka Radke, Christopher Winters re 22 MOTION for Leave to Exceed Page Limit *for Memorandum in Opposition* as to 17 MOTION for Preliminary Injunction. (Rose, Jonathan) (Entered: 07/26/2024) |
| 07/26/2024 | 24 | MOTION for Leave to Exceed Page Limit *for Brief in Support* re 17 MOTION for Preliminary Injunction filed by Michael Gantt, Rebecca Gantt, Brian Wuoti, Kaitlyn Wuoti. (Widmalm-Delphonse, Johannes) (Entered: 07/26/2024) |
| 07/29/2024 | 25 | ORDER granting 24 Motion to Exceed Page Limit *for Brief in Support* re: 17 MOTION for Preliminary Injunction; granting 22 Motion to Exceed Page Limit *for Memorandum in Opposition* as to 17 MOTION for Summary Judgment. Signed by Judge William K. Sessions III on 7/29/2024. (This is a text-only Order.) (eae) (Entered: 07/29/2024) |
| 07/29/2024 | 26 | RESPONSE in Opposition re 17 MOTION for Preliminary Injunction filed by Stacey Edmunds, Aryka Radke, Christopher Winters. (Rose, Jonathan) (Entered: 07/29/2024) |
| 07/29/2024 | 27 | DECLARATION of Lindsay R. Barron re: 26 Response in Opposition re 17 MOTION for Preliminary Injunction by Stacey Edmunds, Aryka Radke, Christopher Winters. (Attachments: # 1 Index of Exhibits, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9)(Rose, Jonathan) Link added on 7/29/2024 (law). (Entered: 07/29/2024) |
| 07/29/2024 | 28 | DECLARATION of Stacey Edmunds re: 26 Response in Opposition re 17 MOTION for Preliminary Injunction by Stacey Edmunds, Aryka Radke, Christopher Winters. (Attachments: # 1 |

| | | Exhibit 1, # [2] Exhibit 2)(Rose, Jonathan) Text clarified, link added on 7/29/2024 (law). (Entered: 07/29/2024) |
|---|---|---|
| 08/02/2024 | [29] | ANSWER to Complaint by Stacey Edmunds, Aryka Radke, Christopher Winters.(Rose, Jonathan) (Entered: 08/02/2024) |
| 08/02/2024 | [30] | ENE LETTER re: Potential Evaluators sent; responses due by 8/19/2024. (law) (Entered: 08/02/2024) |
| 08/05/2024 | [31] | STIPULATED MOTION for Extension of Time to File Response/Reply as to [17] MOTION for Preliminary Injunction filed by Michael Gantt, Rebecca Gantt, Brian Wuoti, Kaitlyn Wuoti. (Widmalm-Delphonse, Johannes) (Entered: 08/05/2024) |
| 08/12/2024 | 32 | ORDER granting [31] STIPULATED MOTION for Extension of Time to File Response/Reply as to [17] MOTION for Preliminary Injunction. Signed by Judge William K. Sessions III on 8/12/2024. (This is a text-only Order.) (eae) (Entered: 08/12/2024) |
| 08/19/2024 | [33] | EVALUATOR SELECTION Response by Stacey Edmunds, Aryka Radke, Christopher Winters. (Rose, Jonathan) (Entered: 08/19/2024) |
| 08/19/2024 | [34] | ASSIGNED Early Neutral Evaluator: Gregory S. Clayton, Esq. (law) (Entered: 08/19/2024) |
| 08/22/2024 | [35] | STIPULATED MOTION for Leave to Exceed Page Limit *for Reply* re [17] MOTION for Preliminary Injunction filed by Michael Gantt, Rebecca Gantt, Brian Wuoti, Kaitlyn Wuoti. (Widmalm-Delphonse, Johannes) Link added, text clarified on 8/22/2024 (law). (Entered: 08/22/2024) |
| 08/22/2024 | 36 | ORDER granting [35] Stipulated Motion to Exceed Page Limit for Reply re [17] MOTION for Preliminary Injunction. Signed by Judge William K. Sessions III on 8/22/2024. (This is a text-only Order.) (eae) (Entered: 08/22/2024) |
| 08/26/2024 | [37] | REPLY to Response to [17] MOTION for Preliminary Injunction filed by Michael Gantt, Rebecca Gantt, Brian Wuoti, Kaitlyn Wuoti. (Attachments: # [1] Index of Exhibits, # [2] Second Declaration of Kaitlyn Wuoti, # [3] Second Declaration of |

| | | |
|---|---|---|
| | | Michael Gantt, # 4 Exhibit M, # 5 Exhibit N, # 6 Exhibit O, # 7 Exhibit P, # 8 Exhibit Q, # 9 Exhibit R)(Widmalm-Delphonse, Johannes) Text clarified on 8/27/2024 (law). (Entered: 08/26/2024) |
| 09/04/2024 | 38 | STIPULATED DISCOVERY LETTER SENT re: no stipulated discovery schedule filed; case will be set for a scheduling conference unless stipulated schedule is filed. (law) (Entered: 09/04/2024) |
| 09/24/2024 | 39 | MOTION to Consolidate Cases filed by Stacey Edmunds, Aryka Radke, Christopher Winters. (Rose, Jonathan) (Entered: 09/24/2024) |
| 09/26/2024 | 40 | PROPOSED Stipulated Discovery Schedule/Order by Stacey Edmunds, Aryka Radke, Christopher Winters. (Attachments: # 1 Exhibit A)(Rose, Jonathan) (Entered: 09/26/2024) |
| 09/27/2024 | 41 | LETTER SENT re: 40 proposed stipulated discovery schedule non-compliance with LR 26(a)(1) and (4); case will be set for a scheduling conference unless a complaint stipulated schedule is filed. (law) (Entered: 09/27/2024) |
| 10/02/2024 | 42 | STIPULATED MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Consolidate Cases filed by Michael Gantt, Rebecca Gantt, Brian Wuoti, Kaitlyn Wuoti. (Scruggs, Jonathan) (Entered: 10/02/2024) |
| 10/02/2024 | 43 | ORDER granting 42 STIPULATED MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Consolidate Cases. Signed by Judge William K. Sessions III on 10/2/2024. (This is a text-only Order.) (eae) (Entered: 10/02/2024) |
| 10/09/2024 | 44 | UNOPPOSED MOTION to Enlarge the Discovery Schedule/Order filed by Stacey Edmunds, Aryka Radke, Christopher Winters. (Attachments: # 1 Proposed Order, # 2 Exhibit A)(Rose, Jonathan) Text clarified on 10/9/2024 (law). (Entered: 10/09/2024) |
| 10/10/2024 | 45 | STIPULATED DISCOVERY SCHEDULE/ORDER granting 44 Unopposed Motion to Enlarge the Discovery Schedule/Order: Discovery due by 5/2/2025; Motions due by 6/2/2025; Early |

| | | |
|---|---|---|
| | | Neutral Evaluation set for 2/13/2025 at 09:30 AM; Scheduling Conference to be scheduled two weeks after ruling on Motions for Summary Judgment. Signed by Judge William K. Sessions III on 10/10/2024. (Attachments: # 1 Exhibit A) (law) (Entered: 10/10/2024) |
| 10/14/2024 | 46 | RESPONSE in Opposition re 39 MOTION to Consolidate Cases filed by Michael Gantt, Rebecca Gantt, Brian Wuoti, Kaitlyn Wuoti. (Widmalm-Delphonse, Johannes) (Entered: 10/14/2024) |
| 10/22/2024 | 47 | REPLY to Response to 39 MOTION to Consolidate Cases filed by Stacey Edmunds, Aryka Radke, Christopher Winters. (Rose, Jonathan) Text clarified on 10/22/2024 (law). (Entered: 10/22/2024) |
| 10/28/2024 | 48 | MOTION to Amend 1 Complaint filed by Brian Wuoti, Kaitlyn Wuoti, Michael Gantt, Rebecca Gantt. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Widmalm-Delphonse, Johannes) Attachment descriptions clarified on 10/28/2024 (law). (Entered: 10/28/2024) |
| 10/28/2024 | 49 | DISCOVERY CERTIFICATE - Initial Disclosures by Christopher Winters, Aryka Radke, Stacey Edmunds.(Kane, Ryan) (Entered: 10/28/2024) |
| 10/28/2024 | 50 | DISCOVERY CERTIFICATE - Initial Disclosures by Brian Wuoti, Kaitlyn Wuoti, Michael Gantt, Rebecca Gantt. (Widmalm-Delphonse, Johannes) (Entered: 10/28/2024) |
| 11/12/2024 | 51 | RESPONSE in Opposition re 48 MOTION to Amend 1 Complaint filed by Christopher Winters, Aryka Radke, Stacey Edmunds. (Rose, Jonathan) (Entered: 11/12/2024) |
| 11/22/2024 | 52 | REPLY to Response to 48 MOTION to Amend 1 Complaint filed by Brian Wuoti, Kaitlyn Wuoti, Michael Gantt, Rebecca Gantt. (Widmalm-Delphonse, Johannes) (Entered: 11/22/2024) |
| 12/20/2024 | 53 | DISCOVERY CERTIFICATE - Response to Request for Admissions *and Response to Interrogatories* by Christopher Winters, Aryka Radke, Stacey Edmunds.(Rose, Jonathan) (Entered: 12/20/2024) |

| | | |
|---|---|---|
| 01/10/2025 | 54 | STIPULATED MOTION to Amend the Discovery Schedule/Order filed by Christopher Winters, Aryka Radke, Stacey Edmunds. (Attachments: # 1 Proposed Order)(Rose, Jonathan) (Entered: 01/10/2025) |
| 01/10/2025 | 55 | STIPULATED FIRST AMENDED DISCOVERY SCHEDULE/ORDER granting 54 Stipulated Motion to Amend the Discovery Schedule/Order: Discovery due by 6/2/2025; Motions due by 7/2/2025; Early Neutral Evaluation set for 5/20/2025 at 09:30 AM; a scheduling conference to be set 2 weeks after ruling on motions for summary judgment. Signed by Judge William K. Sessions III on 1/10/2025. (law) (Entered: 01/10/2025) |
| 01/10/2025 | 56 | DISCOVERY CERTIFICATE - Response to Request to Produce by Christopher Winters, Aryka Radke, Stacey Edmunds.(Rose, Jonathan) (Entered: 01/10/2025) |
| 02/20/2025 | 57 | OPINION AND ORDER denying 39 Motion to Consolidate Cases. Signed by Judge William K. Sessions III on 2/20/2025. (law) (Entered: 02/21/2025) |
| 02/20/2025 | 58 | OPINION AND ORDER granting 48 Motion to Amend 1 Complaint. Signed by Judge William K. Sessions III on 2/20/2025. (law) (Entered: 02/21/2025) |
| 02/20/2025 | 59 | OPINION AND ORDER denying 17 Motion for Preliminary Injunction. Signed by Judge William K. Sessions III on 2/20/2025. (law) (Entered: 02/21/2025) |
| 03/21/2025 | 60 | NOTICE OF APPEAL as to 59 Opinion and Order on 17 Motion for Preliminary Injunction by Brian Wuoti, Kaitlyn Wuoti, Michael Gantt, Rebecca Gantt. (Filing fee $ 605 receipt number AVTDC-2049227) (Widmalm-Delphonse, Johannes) (Entered: 03/21/2025) |
| 03/27/2025 | 61 | TRANSMITTED Index on Appeal, Circuit No. 25-678, re: 60 Notice of Appeal as to ruling on 59 Order on Motion for Preliminary Injunction. (Attachments: # 1 Docket Sheet (public), # 2 Docket Sheet (sealed), # 3 Clerk's Certification) |

| | | (kac) (Main Document 61 replaced on 3/28/2025) (law). (Entered: 03/27/2025) |
|---|---|---|
| 03/28/2025 | 62 | NOTICE OF DOCKET ENTRY CORRECTION re: 61 Transmitted Index on Appeal. The main document has been replaced to remove a blank page. The corrected document is now attached to 61 and this entry. (law) (Entered: 03/28/2025) |
| 03/31/2025 | 63 | STIPULATED MOTION to Amend the Discovery Schedule/Order filed by Christopher Winters, Aryka Radke, Stacey Edmunds(Gaudet, Patrick) (Entered: 03/31/2025) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/01/2025 11:48:40 | | | |
| **PACER Login:** | cindyeville | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:24-cv-00614-wks |
| **Billable Pages:** | 8 | **Cost:** | 0.80 |

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

BRIAN WUOTI; KAITLYN WUOTI;      )
MICHAEL GANTT; and REBECCA       )
GANTT,                           )
                                 )
        Plaintiffs,              )
                                 )
            v.                   )    Case No. 2:24-cv-614
                                 )
CHRISTOPHER WINTERS, in his      )
official capacity as             )
Commissioner of the Vermont      )
Department for Children and      )
Families, ARYKA RADKE in her     )
official capacity as Deputy      )
Commissioner of the Family       )
Services Division, and           )
STACEY EDMUNDS, in her           )
official capacity as Director    )
of Residential Licensing and     )
Special Investigations,          )
                                 )
        Defendants.              )

## OPINION AND ORDER

Plaintiffs Brian Wuoti, Kaitlyn Wuoti, Michael Gantt, and

Rebecca Gantt ("Plaintiffs") bring this action claiming

violations of their constitutional rights when Defendants,

acting on behalf of the Vermont Department for Children and

Families ("DCF"), declined to renew their licenses to serve as

foster parents.  The case centers on Plaintiffs' objections to

DCF policies relating to the care of LGBTQ foster children.

Plaintiffs submit that those policies are inconsistent with

their Christian beliefs, and that denying them foster care

licenses based on their objections was unlawful.  Before the
Court is Plaintiffs' motion for a preliminary injunction.  For
the reasons set forth below, the motion is denied.

## Factual Background

### I.    Responsibility for Foster Children's Care

The Vermont Department for Children and Families ("DCF")
administers the State's foster care program according to its
Licensing Rules for Foster Homes in Vermont ("Rules").  When a
child is in foster care, DCF retains control over the child's
"care, maintenance, and education."  33 V.S.A. § 104(9).  While
DCF maintains legal custody of the child, foster caregivers are
required to make "careful and sensible parental decisions that
maintain the health, safety, and best interests of a child or
youth" while "at the same time encouraging the emotional and
developmental growth of the child."  *Id.* § 4906.  Accordingly,
foster parents must demonstrate to DCF that they are able to
"meet the physical, emotional, developmental and educational
needs of each foster child."  Rule 301.

### II.   LGBTQ Protections in the Foster Care Program

DCF Rules and Policies provide certain protections for
LGBTQ children within the foster care system.  For background on
the development of those protections, Defendants have submitted
the Declaration of Lindsay Barron, Policy and Planning Manager
in DCF's Family Services Division ("FSD").  ECF No. 27.  Prior

to becoming Policy and Planning Manager, Barron served as an FSD
Planning and Policy Advisor.  In that prior role, she
participated in the policy-development process at FSD.

Barron explains that in mid-2015, DCF realized that the
foster care system's treatment of LGBTQ youth required a
significant review.  Certain community partners were reporting
youth concerns about the lack of attention to their needs, and
DCF was receiving an increasing number of questions about how to
deal with issues such as exploration of sexual orientation and
gender identity.  DCF did not have a policy in place at that
time regarding the treatment of LGBTQ foster children.

Barron further explains that research had begun to show
that LGBTQ children were overrepresented in foster care systems
and were experiencing poor outcomes nationally.  Data compiled
by the Vermont Department of Health showed a substantially
increased risk of negative outcomes among LGBTQ youth, including
depression, suicidality, sexual assault, missing school, and
substance abuse.  Vermont's findings were consistent with other
studies, which showed the serious challenges facing LGBTQ youth.

In response to these concerns, DCF convened a multi-
disciplinary LGBTQ Workgroup in early 2016.  In September 2016,
the group released a report summarizing feedback from focus
groups involving children in DCF custody.  In early 2017, DCF
created a new policy, Policy 76, intended to improve outcomes by

providing "safe, healthy, and inclusive environment[s] for all children and youth served by the division."  ECF No. 27-5 at 1. Policy 76 acknowledges that exploring sexual orientation, gender identity, and gender expression "is a normal part of human identity development," and that DCF will prohibit "discrimination and bias based on a child or youth's real or perceived sexual orientation, gender identity or gender expression."  *Id.*  Policy 76 requires staff to consider a potential caregiver's "attitude and behavior" about children's sexual or gender identity, and to make "ongoing efforts to recruit, train, support, and retain foster families who are LGBTQ affirming and supporting."  *Id.* at 5.

Later in 2017, DCF amended Policy 76 to add guidance regarding "additional supports and resources" for families "to work through barriers they may face regarding their child's gender or sexual identity."  ECF No. 27-6 at 1.  In 2018, DCF received a "Youth Advocacy Document" from Forward Youth Advisory Board, a group of young people ages 14 to 22 who each had experience in Vermont's foster care system.  ECF No. 27-8.  The Youth Advocacy Document expressed the need for foster homes where children are safe, comfortable, and treated with dignity, and specifically recommended that DCF require all foster parents to take the LGBTQ training offered by the department.

In November 2022, DCF updated and clarified its Foster Care Licensing Rules with respect to LGBTQ youth. DCF added language to Rule 200, the department's anti-discrimination rule, expressly prohibiting a foster parent from discriminating against a foster child based on sexual orientation or gender identity. Rule 201.10 requires "[r]espect for the worth of all individuals regardless of race, color, national origin, ancestry, culture, religion, sex, gender identity, sexual identity, and physical or mental ability." Rule 315 requires foster parents to support children in wearing hairstyles, clothing, and accessories affirming the child's racial, cultural, tribal, religious, or gender identity. DCF further amended Rule 035, adding a provision that prohibits the department from granting variances from Rules 200, 201, and 315.

## III. The Licensing Process

When considering prospective foster parents for licensing, members of DCF's Residential Licensing Special Investigation ("RLSI") unit conduct a background check, interviews, and home site visits. Pursuant to Policy 76, RLSI workers are tasked with "[k]eeping children and youth safe while meeting their unique needs, regardless of whether these needs are related to their sexual orientation, gender identity, or gender expression." ECF No. 17-6 at 2. The foster care license application also asks self-assessment questions, in which

5

applicants are asked to rate on a scale of 1 to 5 their
agreement with various statements, including: "My family would
be accepting and supportive of an LGBTQ foster child."  ECF No.
28-1 at 9.

RLSI Director Stacey Edmunds explains in her Declaration
that applicants who rate themselves at the low end of the self-
assessment scale often do so because they do not know what it
means to be supportive, or because they do not know much about
LGBTQ youth.  RLSI works to help those applicants better
understand the requirements and what it would mean to be
supportive.  Many such applicants are ultimately licensed.

Edmunds asserts that the reasons for an applicant's
possible discomfort with LGBTQ children are not considered by
RLSI.  The focus is instead on the well-being of the child.
According to Edmunds, multiple Vermont families have expressed
concerns based upon their religious beliefs, and after learning
more about what is required to care for LGBTQ children or youth,
have "reached the point where they could commit to being
supportive and affirming of an individual child in their care,
notwithstanding broader beliefs about sexual orientation and
gender identity."  ECF No. 28 at 4, ¶ 14.

Because foster parents may not discriminate, they must be
willing to accept any child.  Rule 200.1 does provide an
exception for parents who are unable to foster children of a

6

particular age or with special needs.  Rule 200.1 does not allow
applicants to refuse care for children based on any of the
statuses listed in Rule 200, which include sexual orientation or
gender identity.

Defendants' memorandum cites research on the importance of
family acceptance for LGBTQ youth.  Such studies reportedly show
that "highly rejected" LGBTQ youth are far more likely to suffer
from high levels of depression, attempt suicide, use drugs, and
be at risk for sexually transmitted diseases.  Support by
caregivers includes being welcoming to LGBTQ friends or
partners, talking respectfully about the individual's LGBTQ
identity, using names and pronouns correctly, supporting gender
expression, and educating themselves about LGBTQ people and
issues.  Family support is associated with improved outcomes
including greater self-esteem, better health, less depression,
less substance abuse, and fewer suicide attempts.

## IV. Plaintiffs' Licenses

### A. The Wuotis

Brian and Kaitlyn (Katy) Wuoti are Christians.  Brian is
the pastor of a nondenominational church.  Katy homeschools
their five children and helps lead two Bible studies.  They
attest that their faith inspired them to care for vulnerable
children in foster care.  They became foster parents in 2014,

have two adopted children from foster care, and have three
biological children.

In May 2021, the Wuotis applied to renew their foster care
license.  Christopher Murphy, an official with DCF, conducted a
home visit as part of the renewal process.  After the visit, he
sent the Wuotis a form asking them to rate on a scale of one to
five whether they agreed that their family would be accepting
and supportive of an LGBTQ foster child.  Brian and Katy each
responded with a "three."

Murphy subsequently emailed the Wuotis and asked them what
might be needed to increase their responses to a four or a five.
The Wuotis stated while they would love and accept any child,
they could not encourage a child to pursue same-sex romantic
behavior or transition to the opposite gender.  Katy explained
that "we realize not everyone would interpret our Biblical views
as accepting and supporting.  Just like we would never encourage
a child to pursue pornography, sex outside of marriage, or
feelings of pedophilia, we would not encourage a child to pursue
their feelings of homosexuality."  ECF No. 17-10 at 10.

Murphy thanked Katy for "such a thoughtful and honest
answer to my question."  *Id.* at 9.  He also explained that DCF
had begun asking potential foster parents about LGBTQ issues due
to "overwhelming evidence of how important acceptance and
support is to outcomes for LGBTQ youth.  Very often, the wors[t]

8

sorts of outcomes you can imagine (suicide, substance abuse, human trafficking) are shown to be tied to living in homes that were not affirming of their sexual and gender identities." *Id.* Murphy explained that because the Wuotis would be unable to "encourage and support children in their sexual and gender identity," they were not eligible for a renewed license. *Id.*

On April 22, 2022, DCF issued a Notice of Decision ("Notice") revoking the Wuotis' license. The Notice concluded that the Wuotis had not demonstrated compliance with Section 201.2, which requires "[k]nowledge of child development and the needs of children." ECF No. 17-8 at 2. The basis for that finding, according to the Notice, was that "Mrs. Wuoti indicated that the two of you found homosexuality to be on par with pornography and pedophilia, as items you would 'never encourage a child to pursue.'" *Id.* The Notice also stated that the Wuotis had not shown they were able to satisfy Rule 301, which requires foster families to "meet the physical, emotional, developmental, and educational needs of each foster child, in accordance with the child's case plan." *Id.* In support of that finding, the Notice again cited Katy's email in which she explained that she and her husband "would not encourage a child to pursue their feelings of homosexuality," and would actively "encourage (not force)" a child to deny their LGBTQ+ identity. *Id.*

9

The Wuotis filed an administrative appeal to the Vermont
Human Services Board ("Board"). After an in-person hearing, the
Board denied the appeal. The Board found, in part, that the
Wuotis' "stated intent to encourage a child to deny same-sex
attraction or a particular gender identity and to 'not encourage
a child to pursue their feelings of homosexuality'" showed "a
lack of understanding of child development and, at the least, an
inability to meet the emotional and developmental needs of an
LGBTQ child." ECF No. 28-2 at 17. In response to the Wuotis'
argument that DCF could place a non-LGBTQ child in their care,
the Board noted the investigator's explanation that "sexual
orientation might not be apparent or visible" at the time of
placement. *Id.* at 17-18. The Board also cited the
investigator's explanation that "screening a child for sexual
orientation or gender identity would be problematic because it
would cross boundaries respecting the child's privacy." *Id.* at
18.

The Board ultimately found that "it is undisputed [the
Wuotis] are warm, loving, kind, and respectful people who have a
history of parenting foster children without raising any
concerns." *Id.* at 21. The Board further concluded that the
Wuotis, through their own statements, established "that they are
unable to provide encouragement to a child who might have
feelings of same-sex attraction, particularly if the child

10

wishes to explore or pursue such feelings." *Id.* The Board
found that DCF had "based its decision not on [the Wuotis']
beliefs, but [on] how they stated they would act towards LGBTQ
children," and that DCF's denial of the application was not an
abuse of discretion. *Id.* at 22-23.

### B. The Gantts

Like the Wuotis, Michael and Rebecca Gantt are Christians.
Brian serves as the pastor of a local church. Rebecca dedicates
her time to raising their seven children. Of those seven
children, three are adopted and four are biological.

In September 2023, DCF asked the Gantts if they would
provide foster care for a baby boy about to be born to a woman
suffering from drug addiction. DCF reportedly informed the
Gantts that they would be "the most qualified" and the
"unanimous choice" for this child. Later in 2023, Michael Gantt
exchanged emails with DCF Resource Coordinator Michelle Colburn
regarding the impact of DCF's new licensing rules. ECF No. 17-9
at 3. In that exchange, Michael explained that the Gantts would
love any child regardless of how the child identified but could
not use pronouns consistent with that identification. Ms.
Colburn reportedly informed RLSI investigator Murphy, who spoke
with Michael by phone on January 22, 2024.

During that conversation, Michael again stated that while
he and his wife would be loving and supporting of any child in

11

their care, being "affirming just takes things to another level
I just cannot go to given my religious convictions." *Id.* When
Murphy offered specific scenarios, such as taking a child to a
gay pride event, allowing non-cis-gender haircuts or dress, or
supporting a child's participation in an LGBTQ student
organization, Michael stated that he and his wife would not
allow the first two things and probably would not allow the
third. *Id.* Murphy offered additional training and resources to
clarify the regulatory requirements, to which Michael responded:
"I know that our beliefs are not going to change." *Id.* at 4.
Rebecca Gantt subsequently sent Murphy an email, explaining that
"we believe God created two distinct sexes and cannot lie to a
child about their God given identity. We cannot attend events
like pride parades because we cannot support what that type of
event stands for and promotes." *Id.*

On February 6, 2024, DCF issued a Notice of Decision
revoking the Gantts' foster care license, citing failure to
comply with licensing Rules 301, 315, and 037. ECF No. 17-9.
As noted above, Rule 301 states that "[f]oster parents shall
meet the physical, emotional, developmental and educational
needs of each foster child, in accordance with the child's case
plan." Rule 315 provides that "[f]oster parents shall support
children in wearing hairstyles, clothing, and accessories
affirming of the child's racial, cultural, tribal, religious, or

gender identity." Rule 037 states that "[a] license may be
denied or revoked if the applicant or licensee fails to meet any
licensing rules." For support, DCF cited the Gantts'
communications with Colburn and Murphy. The Gantts did not
appeal DCF's decision.

## Discussion

### I.   Preliminary Injunction Standard

A preliminary injunction is an "extraordinary remedy."
*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). In
order to justify a preliminary injunction, a movant must
demonstrate: (1) irreparable harm absent injunctive relief; (2)
either a likelihood of success on the merits, or a serious
question going to the merits to make them a fair ground for
trial, with a balance of hardships tipping decidedly in the
plaintiff's favor; and (3) that the public's interest weighs in
favor of granting an injunction. *See Metro. Taxicab Bd. of
Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010).
"When, as here, the moving party seeks a preliminary injunction
that will affect government action taken in the public interest
pursuant to a statutory or regulatory scheme, the injunction
should be granted only if the moving party meets the more
rigorous likelihood-of-success standard." *Id.* (citation
omitted); *see Friends of the E. Hampton Airport, Inc. v. Town of
E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016).

## II.  Likelihood of Success

### A. Freedom of Speech

The parties' fundamental disagreement with respect to Plaintiffs' freedom of speech claim is whether the DCF Rules and Policies, as well as Defendants' actions, pertained primarily to speech or conduct.  Defendants argue conduct: that the Rules and Policies focus strictly on actions that are in the best interest of the foster child and do not require foster parents to espouse or endorse any form of ideology.  Plaintiffs allege compelled and restricted speech based on viewpoint.  "While the First Amendment protects the rights of citizens to express their viewpoints, however unpopular, it does not guarantee ideal conditions for doing so, since the individual's right to speech must always be balanced against the state's interest in safety, and its right to regulate conduct that it legitimately considers potentially dangerous."  *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 209 (2d Cir. 2004).  Here, those state interests encompass the health and safety of LGBTQ youth in the foster care system.

Vermont law requires DCF to "protect and promote the welfare of children."  33 V.S.A. § 4903.  Accordingly, DCF's Rules require foster parents to "provide positive, constructive experiences for all children in their care."  Rule 010.  Policy 76 expands on these principles with respect to LGBTQ youth,

14

while recent Rule amendments similarly guide the care of
children in the foster care system.

These Rules and Policies are, as discussed above, driven by
research and feedback on the factors that improve outcomes for
LGBTQ youth in foster care.  Those outcomes include rates of
depression, substance abuse, and suicide attempts.  Given those
concerns, DCF is tasked with ensuring that foster care licensees
are able and willing to provide an accepting and supportive
home.  Confirming such capabilities relates directly to
caregiver conduct.  *See, e.g., Bates v. Pakseresht*, No. 2:23-CV-
00474-AN, 2023 WL 7546002, at *16 (D. Or. Nov. 14, 2023)
(concluding that state rule regulating foster care of LGBTQ
youth "does not facially compel or restrict speech, but rather
seeks to regulate an applicant's conduct in creating a
respectful, affirming, and supportive home for a child in [the
state's] care").

Plaintiffs argue that Defendants are compelling them to
"speak the State's views while prohibiting them from expressing
their religious views."  ECF No. 17-2 at 8.  Compliance with DCF
Rules and Policies, however, is different from speech.
Defendants did not compel Plaintiffs to change their beliefs, or
to make any statements that disavowed those beliefs.  Instead,
Defendants were pursuing their mission of ensuring a welcoming,
affirming, and safe home for each child.

Plaintiffs further argue that Defendants were compelling them to use preferred pronouns and to otherwise speak in ways that are contrary to their religious beliefs about gender and sexuality, while at the same time restricting them from expressing their own views on those issues.  The DCF Rules and Policies at issue, however, are based upon research and feedback regarding outcomes for LGBTQ youth.  The record does not establish that they are targeted at any religious viewpoint.  Indeed, the alleged restrictions are at most incidental to rules of conduct designed to promote healthy and affirming homes.[1]

Defendants' briefing notes that the DCF Rules include a host of restrictions on potentially-harmful conduct, including requiring "healthy patterns of social and interpersonal relationships" (Rule 201.1), disciplining "in a constructive and educational manner" (Rule 201.3), and respecting the foster child's religious beliefs and cultural heritage (Rule 338).  ECF No. 26 at 29.  If those restrictions bar caregivers from, for example, using foul or abusive language in the home, or

---

[1]  In *Bates*, the district court concluded that although on its face the Rule at issue did not compel speech, the State's application of the Rule was compelling speech as speech rather than conduct.  2023 WL 7546002, at *17.  Even if the Court were to reach that same conclusion here, the Court would still deny preliminary injunctive relief based upon its finding that the Rules and Policies in this case, both facially and as applied, satisfy strict scrutiny as discussed below.

espousing the superiority of their own religious practices, the burdens on speech are incidental to the well-being of the foster child.  Such incidental burdens are not unconstitutional.  *See Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 567 (2011) ("The First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech."); *Kerik*, 356 F.3d at 209.[2]

**B. Freedom of Association**

Plaintiffs next argue that they are entitled to relief because Defendants are violating their free association rights. The Constitution protects the right to "join together to advance shared beliefs, goals, and ideas, which, if pursued individually, would be protected by the First Amendment." *Sullivan v. Univ. of Washington*, 60 F.4th 574, 579 (9th Cir. 2023).  Defendants submit that most free association cases pertain to the right to exclude those whose participation would burden expressive rights.  ECF No. 26 at 31 (citing, *e.g.*, *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (pertaining to the Boy Scouts' right to exclude a gay scout leader)).  Here, rather than being denied the right to exclude others, Plaintiffs

---

[2]  In *Kerik*, the Second Circuit held that "a conduct-regulating statute of general application that imposes an incidental burden on the exercise of free speech rights does not implicate the First Amendment."  356 F.3d at 209.  The DCF Rules and Policies at issue are generally applicable for reasons discussed immediately below.

argue that they are being compelled to *join* in certain activities, such as a gay pride parade, that are counter to their religious beliefs. It is well established that freedom of association "plainly presupposes a freedom not to associate." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984).

The Court finds that Plaintiffs are nonetheless unlikely to succeed on this claim. Nothing in the record indicates that Defendants are compelling Plaintiffs to associate with any specific person or group. Plaintiffs protest that their license denials were based in part on their professed inability to associate with certain events, as in a pride parade. When DCF raised the possibility of attending a gay pride parade, however, the suggestion was merely hypothetical. Indeed, while Policy 76 suggests that staff "encourage" such activities, there is no requirement that foster families engage in them. Nor are Defendants preventing Plaintiffs from associating with others who share their beliefs, as in attending church. What foster parents may not do is require children in their care to engage in activities that are non-affirming.

Plaintiffs submit that they want to attend church as a family, while also avoiding events that are antithetical to their beliefs. ECF No. 37 at 15. As the court found in *Bates*, however, "the Rule does not prevent plaintiff from continuing to associate with her religious activities and communities, nor

does it prevent her from including her biological children in
those activities.  What the Rule does do is protect the
associative rights of a child, in [the State's] care, who is
placed in plaintiff's home, particularly when the activity that
plaintiff seeks to expose the child to would disaffirm the
child's LGBTQ+ identities."  2023 WL 7546002, at *29.  *Bates*
found the plaintiff's compulsion argument equally unpersuasive:
"plaintiff is not required to attend those events [such as a
pride parade].  It is sufficient that she merely facilitates the
attendance of a child placed in her care."  2023 WL 7546002, at
*30.  The Court finds the reasoning in *Bates* persuasive, and
that Plaintiffs are not likely to succeed on their free
association claim.

### C. Free Exercise

Plaintiffs also seek preliminary injunctive relief on the
basis of their free exercise claim.  The Free Exercise Clause
"protects an individual's private right to religious belief, as
well as the 'performance of (or abstention from) physical acts
that constitute the free exercise of religion.'"  *Kane v. De
Blasio*, 19 F.4th 152, 163-64 (2d Cir. 2021) (quoting *Cent.
Rabbinical Cong. of U.S. & Can. v. N.Y.C. Dep't of Health &
Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014)).  To succeed
on a Free Exercise Clause claim, a plaintiff must generally
establish that "'the object of [the challenged] law is to

infringe upon or restrict practices because of their religious motivation,' or that its 'purpose . . . is the suppression of religion or religious conduct.'" *Okwedy v. Molinary*, 69 F. App'x 482, 484 (2d Cir. 2003) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) ("*Lukumi*")).

Free Exercise Clause protection "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Kane*, 19 F.4th at 163-64. When the government seeks to enforce a law that is neutral and of general applicability, "it need only demonstrate a rational basis for its enforcement, even if enforcement of the law incidentally burdens religious practices." *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002). "If the law is not neutral or not generally applicable, it is subject to strict scrutiny, and the burden shifts to the government to establish that the law is narrowly tailored to advance a compelling government interest." *We The Patriots USA, Inc. v. Conn. Office of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023).

When reviewing neutrality, the Court begins its analysis with the text of the relevant Rules and Policies. "A law is not neutral ... if it is specifically directed at a religious practice." *Cent. Rabbinical Cong.*, 763 F.3d at 193; *see Lukumi*,

20

508 U.S. at 533 ("if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral").  "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context."  *Lukumi*, 508 U.S. at 533.

Here, nothing on the face of DCF's Rules and Policies targets religious practices or religious applicants.  *See Bates*, 2023 WL 7546002, at *4 (concluding that a similar policy "makes no reference to any specific religious practice, nor does it implicate religion on its face").  Even without specific references to religion, however, a facially-neutral law may be unlawful if it "targets religious conduct for distinctive treatment."  *Lukumi*, 508 U.S. at 534.  The Court must therefore review "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body."  *Id.* at 539.

The history of DCF's policy development with respect to LGBTQ youth in the foster care system is set forth above. Briefly stated, DCF's response was driven by community concerns and by recent research regarding outcomes for LGBTQ children in foster care settings.  DCF's Rule and Policy revisions were

clearly implemented to guide caseworkers and caregivers, and to encourage screening practices to help ensure safe and healthy homes for those children.  Nothing in that history suggests religious targeting.

Application of DCF's Rules and Policies was similarly neutral.  "Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality.  The Free Exercise Clause protects against governmental hostility which is masked, as well as overt." *Lukumi*, 508 U.S. at 534.  The Edmunds Declaration states that "DCF accepts prospective foster parents of all creeds and religions."  ECF No. 28 at 5, ¶ 15.  In this case, as the Board found in its review of the Notice of Decision, Defendants appear to have focused exclusively on whether Plaintiffs would be able to provide an accepting home.  Indeed, the record suggests that rather than expressing hostility to any set of religious beliefs, Defendants were acting consistent with the research-based policies developed by DCF for the care and protection of LGBTQ youth.

The policies are also generally applicable.  "The general applicability requirement prohibits the government from in a selective manner imposing burdens only on conduct motivated by religious belief." *Cent. Rabbinical Cong.*, 763 F.3d at 196 (citation and quotation marks omitted).  "A law is not generally

applicable if it invites the government to consider the
particular reasons for a person's conduct by creating a
mechanism for individualized exemptions." *Fulton v. City of
Philadelphia,* 593 U.S. 522, 533 (2021) (quotations marks and
citations omitted).  "A law also lacks general applicability if
it prohibits religious conduct while permitting secular conduct
that undermines the government's asserted interests in a similar
way."  *Id.* at 534.

Plaintiffs contend that exemptions in the DCF Rules mean
the Rules are not generally applicable.  However, the "mere
existence of an exemption procedure, absent any showing that
secularly motivated conduct could be impermissibly favored over
religiously motivated conduct, is not enough to render a law not
generally applicable and subject to strict scrutiny."  *We The
Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288-89 (2d Cir.),
*opinion clarified*, 17 F.4th 368 (2d Cir. 2021).  No exemption is
applicable here, as the variance provision in question (Rule
035) does not apply to the Rules that formed the basis for
Plaintiffs' license denials.

Furthermore, there is no indication that Defendants applied
the DCF Rules in a manner that penalizes families with
"religiously informed views."  ECF No. 17 at 21.  Instead,
Defendants focused on Plaintiffs' respective abilities to comply
with the Rules, regardless of the reasons underlying Plaintiffs'

23

objections.  While those reasons could be either religious or
secular, the record suggests that the licensing outcome of such
objections would be the same.  *See* ECF No. 28 at 5, ¶ 15
(Edmunds Declaration stating that "[u]ltimately, the reasons for
an applicant's discomfort play no part in the analysis").
Because the DCF Rules and Policies do not compel Defendants or
others within the department to "consider the particular reasons
for a person's conduct," *Fulton*, 593 U.S. at 534, and because no
exemption applies here, the Court finds that Rules and Policies
at issue are generally applicable, and that Plaintiffs are
unlikely to succeed on their free exercise claim.

### C. Constitutional Scrutiny

Given the Court's conclusion that DCF's Rules and Policies,
both facially and as applied, are neutral and generally
applicable, Defendants need only show a rational basis for their
enforcement "even if enforcement of the law incidentally burdens
religious practices."  *Fifth Ave. Presbyterian Church*, 293 F.3d
at 574.  In this case that review is straightforward, as
Defendants have shown that Policy 76 and related changes to
DCF's Rules and Policies were prompted by feedback from various
stakeholders, and by recent research showing the dangers
inherent in failing to adequately accept and provide for LGBTQ
youth in Vermont's foster care system.

Defendants argue alternatively that, regardless of the
level of scrutiny, Plaintiffs are not likely to succeed.
Official action "burdening religious conduct that is not both
neutral and generally applicable . . . is subject to strict
scrutiny." *Cent. Rabbinical Cong.*, 763 F.3d at 193.  When
applying strict scrutiny, the Court considers whether
Defendants' policies are "narrowly tailored" to serve a
"compelling" state interest.  *Lukumi*, 508 U.S. at 546.

It is well established that the government has a
"compelling governmental interest in the protection of minor
children." *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89,
104 (2d Cir. 1999) (quotation marks and citation omitted); *see*
*Kia P. v. McIntyre*, 235 F.3d 749, 759 (2d Cir. 2000) (citing
"the state's compelling interest in protecting children from
abuse and neglect").  Creating rules and policies to protect the
health and welfare of foster children therefore furthers a
compelling state interest.  *See New York v. Ferber*, 458 U.S.
747, 757 (1982) ("we have sustained legislation aimed at
protecting the physical and emotional well-being of youth even
when the laws have operated in the sensitive area of
constitutionally protected rights").

Plaintiffs argue that DCF is harming foster children by
excluding non-affirming families, notwithstanding an alleged
shortage of foster families in Vermont.  To the extent

25

Plaintiffs are concerned about foster families whose religious
beliefs are not consistent with DCF policies, DCF does not
compel such families to change or reject their beliefs.  What it
does require is the provision of an affirming environment for
children who are, or who come to identify as, LGBTQ.

Narrow tailoring requires the government to demonstrate
that a policy is the "least restrictive means" of achieving its
objective.  *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S.
707, 718 (1981).  The government's justification "must be
genuine, not hypothesized or invented *post hoc* in response to
litigation."  *United States v. Virginia*, 518 U.S. 515, 533
(1996).  "To meet the requirement of narrow tailoring, the
government must demonstrate that alternative measures" imposing
lesser burdens on religious liberty "would fail to achieve the
government's interests, not simply that the chosen route was
easier."  *McCullen v. Coakley*, 573 U.S. 464, 495 (2014).

Plaintiffs argue that the policies at issue here were not
narrowly-tailored because certain categories of children, such
as those who share the same faith tradition or attend the same
church, could be placed with families such as themselves.  That
solution ignores the potential for a child to be placed and,
post-placement, change their sexual identity in a material way.
In that event, a family that is unwilling to provide the support
mandated by DCF would no longer be a suitable placement for that

child.  In her Declaration, Barron attests that "[r]emoval of an LGBTQ foster child from their placement specifically because of their LGBTQ identity is extremely damaging to their psychological and physical safety, mental health, well-being, and normalcy."  ECF No. 27 at 6, ¶ 23.  The Court therefore finds, based upon the current record, that the Rules and Policies established and implemented by DCF and Defendants serve the compelling interest of protecting the health and welfare of LGBTQ youth and are narrowly-tailored to necessarily address that interest.

### D. Vagueness

Plaintiffs also argue that the licensing scheme at issue is unconstitutionally vague as applied.  A rule or regulation "is unconstitutionally vague if persons of common intelligence must necessarily guess at its meaning and differ as to its application, or if it fails to give a person of ordinary intelligence fair notice of conduct proscribed or required by the regulation, and encourages arbitrary and erratic behavior on the part of officials charged with enforcing the rule."  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted).  "Although regulations with civil consequences 'receive less exacting vagueness scrutiny' than criminal statutes, *see Arriaga v. Mukasey*, 521 F.3d 219, 223 (2d Cir. 2008), regulations that limit the exercise of constitutionally

protected rights are subject to an enhanced vagueness test, *see Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982)." *Hayes v. New York Att'y Grievance Comm. of the Eight Jud. Dist.*, 672 F.3d 158, 168 (2d Cir. 2012).

Plaintiffs focus on Rule 201.2 and Rule 301. Rule 201.2 requires "[k]nowledge of child and adolescent development and the needs of children." Rule 301 requires that foster parents be able to meet a child's "physical, emotional, developmental and education needs." Plaintiffs argue that neither Rule mentions screening for a parent's views on sexual and gender identities. Plaintiffs further contend that the DCF Rules, without stating as much, effectively allow only parents with "progressive views about gender" to be licensed. ECF No. 17-2 at 30.

Defendants point to the entire licensing scheme, including not only Rules 201.2 and 301, but also the non-discrimination provisions such as Rules 200, 201.10, and 315. Given that DCF clearly bars discrimination based upon gender identity, no reasonable reading of its Rules would call into question whether meeting "physical, emotional, and development . . . needs" requires sensitivity to both gender identity and gender identity development.

Plaintiffs are also unlikely to succeed on any claim that the Rules lend themselves to arbitrary or erratic enforcement.

28

In fact, the similarities in the Wuotis' and Gantts' licensing experiences suggest that the Rules are being enforced consistently and in keeping with the policy goals identified in the Barron Declaration.  DCF has determined that LGBTQ children require affirming homes, and Plaintiffs have made clear that their religious beliefs prevent them from providing such affirmation.  The DCF requirements on acceptance of gender identity are clear and consistent, and nothing in their application indicates arbitrary or erratic enforcement.  Consequently, Plaintiffs are not likely to succeed on their as-applied challenge on basis of vagueness.

## III. Other Factors Weigh Against Granting Preliminary Relief

Plaintiffs contend that violation of their First Amendment rights, standing alone, constitutes irreparable harm.  At the preliminary injunction stage, however, "[b]ecause the deprivation of First Amendment rights is an irreparable harm, in First Amendment cases the likelihood of success on the merits is the dominant, if not the dispositive, factor." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020) (quotation marks and citation omitted).  As discussed above, the Court finds that Plaintiffs are not likely to succeed on the merits of their claims.

Plaintiffs' final assertion is that protecting First Amendment rights is in the public interest.  They also contend

that by granting them foster care licenses, the State will increase its capacity to provide loving homes for vulnerable children.  The record indicates that while both sets of Plaintiffs are capable of providing loving homes for many children, Defendants concluded that they do not satisfy DCF requirements with respect to fostering an LGBTQ child. According to DCF, the public interest is served by responding to the needs of such young people in Vermont's foster care system. Defendants' efforts to enforce DCF Rules and Policies, which are in turn supported by both community input and research on the positive impacts of affirming and supportive homes, tip the balance of public interest their favor.

## **Conclusion**

For the reasons set forth above, Plaintiffs' motion for a preliminary injunction (ECF No. 17) is denied.

DATED at Burlington, in the District of Vermont, this 20th day of February, 2025.

<u>/s/ William K. Sessions III</u>
Hon. William K. Sessions III
District Court Judge